IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

APPEAL NO. 24-14049

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CHADWICK LEMAINE,

Defendant-Appellant.

---

On Appeal from the United States District Court
for the Middle District of Florida

Case No. 6:23-cr-00233-CEM-RMN

---

# INITIAL BRIEF OF APPELLANT

---

A. FITZGERALD HALL, ESQ.
FEDERAL DEFENDER
MIDDLE DISTRICT OF FLORIDA

ANN MARIE FITZ, ESQ.
Research & Writing Specialist
Office of the Federal Defender
Florida Bar No. 1007949
400 N. Tampa St., Ste. 2700
Tampa, Florida 33602
Tel: (813) 228-2715
E-Mail: ann_fitz@fd.org

Counsel for Appellant

**United States v. Lemaine**
**No. 24-14019**

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**

Appellant hereby discloses the following persons who have an interest in the outcome of this case pursuant to 11th Cir. R. 26.1-1:

Collins, Meghan Ann

Corrigan, Honorable Timothy J.

Felicetta, Michael

Fitz, Ann – Appellate Counsel for Defendant/Appellant

Hall, A. Fitzgerald – Counsel for Defendant/Appellant

Handberg, Roger B. – Counsel for Appellee

Harrington, Jennifer Michele

Hoffman Price, Honorable Leslie

Howard, Katherine G.

Lemaine, Chadwick – Defendant/Appellant

Lukman, Joshua Roy – Trial Counsel for Defendant/Appellant

Mendoza, Honorable Carlos E. – U.S. District Court Judge

Nate, Adam Joseph – Trial Counsel for Appellee

Norway, Honorable Robert M. – U.S. Magistrate Judge

Reyes, Karla Mariel

**United States v. Lemaine**
**No. 24-14019**

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT – *continued*

Rhodes, David

Sweeney, Sara C. – Counsel for Appellee

No publicly traded company or corporation has an interest in the outcome of this appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Chadwick Lemaine requests oral argument. The first issue presented in this appeal – whether the term "acceptance of responsibility" in U.S.S.G. § 3E1.1 unambiguously excludes consideration of criminal conduct that is unrelated to the underlying offense – is an issue of first impression in this Court and the dispositive matters have not been authoritatively decided. Although the facts and legal arguments are adequately presented in the briefs and on the record, the decisional process would be significantly aided by oral argument.

# TABLE OF CONTENTS


CERTIFICATE OF INTERESTED PERSONS ........................................ C1 of 2

STATEMENT REGARDING ORAL ARGUMENT ........................................ i

TABLE OF CONTENTS ........................................ ii

TABLE OF AUTHORITIES ........................................ iv

STATEMENT OF JURISDICTION ........................................ 1

STATEMENT OF THE ISSUES ........................................ 1

STATEMENT OF THE CASE ........................................ 2

A. Course of the Proceedings ........................................ 2

B. Statement of Facts ........................................ 2

*1. Factual Basis of Plea* ........................................ 2

*2. The Bond Revocation Hearing* ........................................ 4

*3. Sentencing Hearing* ........................................ 6

C. Standard of Review ........................................ 10

SUMMARY OF THE ARGUMENT ........................................ 11

ARGUMENT AND CITATION OF AUTHORITY ........................................ 12

**I. The District Court Erred in Determining that Lemaine was not Eligible for an Accept Responsibility Departure Pursuant to the Plain Meaning of U.S.S.G. § 3E1.1** ........................................ 12

*A. § 3E1.1(a) is Unambiguous* ........................................ 17

**TABLE OF CONTENTS - *continued***


1. The Text of § 3E1.1(a) Conveys an Unambiguous Meaning ....................17

2. The Grammatical Structure of § 3E1.1(a) Modifies the Meaning of "Acceptance of Responsibility" to Unambiguously Exclude Consideration of Criminal Conduct that is Unrelated to the Underlying Offense ..........19

3. The History and Purpose of § 3E1.1(a) Support the Plain Meaning of "Acceptance of Responsibility." ..............20

4. The Traditional Tools of Construction Yield a Definitive Meaning of the Term "Acceptance of Responsibility." ....................26

*B. The Rule of Lenity Applies to Resolve any Doubt of Ambiguity* ....................26

**II. The District Court Procedurally Erred when Resolving Lemaine's Factual Objections to the Presentence Investigation Report** ....................28

**III. The District Court Imposed a Substantively Unreasonable Sentence when it Varied Upward to 96 Months' Imprisonment** ....................36

CONCLUSION ....................41

CERTIFICATE OF COMPLIANCE ....................42

CERTIFICATE OF SERVICE ....................43

# TABLE OF AUTHORITIES


CASES PAGE

*Auer v. Robbins*, 519 U.S. 452 (1997) ....................15 n. 4

*Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410 (1945) .................... 14-15

*District of Columbia v. Wesby*, 583 U.S. 48 (2018) ....................32 n. 8

*Gall v. United States*, 552 U.S. 38 (2007) .................... 10, 36-37, 41

**Kisor v. Wilkie*, 588 U.S. 558 (2019) ....................10-11, 14-17, 25-27

*In re Walter Energy, Inc.*, 911 F.3d 1121 (11th Cir. 2018) ....................18, 19

*Maryland v. Pringle,* 540 U.S. 366 (2003) ....................33 n. 9

*McBride v. State*, 7 So.3d 1146 (Fla. 2d DCA 2009) ....................35

*Nielsen v. Preap*, 586 U.S. 392 (2019) ....................19

*Ornelas v. United States*, 517 U.S. 690 (1996) ....................33 n. 9

*Rafferty v. Denny's, Inc.*, 13 F.4th 1166 (11th Cir. 2021) ....................15 n. 5

*Romero v. Sec'y U.S. Dep't of Homeland Security*, 20 F.4th 1374 (11th Cir. 2021) ....................27

*Shukwit v. United States*, 973 F.2d 903 (11th Cir. 1992) ....................30

*Smith v. United States*, 508 U.S. 223 (1993) ....................17

*Stinson v. United States*, 508 U.S. 36 (1993) ....................14

*Tookes v. State*, 842 So. 2d 1063 (Fla. 4th DCA 2003) ....................30

*United States v. Aguilar-Ibarra*, 740 F.3d 587 (11th Cir. 2014) ....................29

*United States v. Archer*, 531 F.3d 1347 (11th Cir. 2008) ....................26

**TABLE OF AUTHORITIES - *continued***

CASES PAGE

*United States v. Askew*, 193 F.3d 1181 (Cir. 11th 1999)........................................29

*United States v. Barner*, 572 F.3d 1239 (11th Cir. 2009).................................. 35-36

*United States v. Boone*, 97 F.4th 1331 (11th Cir. 2024)..........................................11

*United States v. Bridgewater*, 333 F. App'x 470 (11th Cir. 2009)..........................11

*United States v. Campbell*, 22 F.4th 438 (4th Cir. 2022) ................................. 26-27

*United States v. Caniff*, 955 F.3d 1183 (11th Cir. 2020)........................................27

*United States v. Crisp*, 454 F.3d 1285 (11th Cir. 2006) .........................................40

*United States v. Curley*, 55 F.3d 254 (7th Cir. 1995) .............................................18

*United States v. Curtin*, 78 F.4th 1299 (11th Cir. 2023) ........................................38

**United States v. Dupree*, 57 F.4th 1269 (11th Cir. 2023)............. 10, 14, 16-17, 25

*United States v. Fisher*, 289 F.3d 1329 (11th Cir. 2006)........................................17

*United States v. Gonzalez*, 550 F.3d 1319 (11th Cir. 2008) ...................................38

*United States v. Gupta*, 572 F.3d 878 (11th Cir. 2009).................................... 10-11

**United States v. Hamidullah*, 786 F. App'x 914 (11th Cir. 2019)...................30, 36

*United States v. Horn*, 129 F.4th 1275 (11th Cir. 2025) ........................................10

*United States v. Irey*, 612 F.3d 1160 (11th Cir.2010)....................................... 38-40

*United States v. Lange*, 862 F.3d 1290 (11th Cir. 2017)........................................16

*United States v. Lawrence*, 47 F.3d 1559 (11th Cir. 1995) ............................... 29-30

**TABLE OF AUTHORITIES - *continued***

CASES PAGE

*United States v. Martinez*, 584 F.3d 1022 (11th Cir. 2009)....................29-30, 35-36

*United States v. Nader*, 542 F.3d 713 (9th Cir. 2008) ............................................20

*United States v. Nasir*, 17 F.4th 459 (3d Cir. 2021) ......................................... 26-28

*United States v. Overstreet*, 713 F.3d 627 (11th Cir. 2013) ...................................37

*United States v. Pace*, 17 F.3d 341 (11th Cir. 1994) ................................. 14, 24-25

*United States v. Philidor*, 717 F.3d 883 (11th Cir. 2013)........................... 10, 28-29

*United States v. Poulo*, 491 F.Supp.3d 1244 (11th Cir. 2020) ................................17

*United States v. Pugh*, 515 F.3d 1179 (11th Cir. 2008)..........................................40

*United States v. Rattoballi*, 452 F.3d 127 (2nd Cir. 2006) .....................................40

*United States v. Robertson*, 493 F.3d 1322 (11th Cir. 2007)..................................34

*United States v. Rodriguez*, 732 F.3d 1299 (11th Cir. 2013)..................................34

*United States v. Rosales-Bruno*, 789 F.3d 1249 (11th Cir. 2015) ...........................37

*United States v. Sanchez*, 586 F.3d 918 (11th Cir. 2009).......................................37

*United States v. Santos*, 449 F.3d 93 (2d Cir. 2006) ..............................................35

*United States v. Trailer*, 827 F.3d 933 (11th Cir. 2016)..........................................36

*United States v. Wade*, 458 F.3d 1273 (11th Cir. 2006)..........................................28

*United States v. Waters*, 937 F.3d 1344 (11th Cir. 2019).......................................10

*United States v. Watkins*, 10 F.4th 1179 (11th Cir. 2021)...............................32 n. 8

**TABLE OF AUTHORITIES - *continued***

CASES PAGE

*United States v. Watkins*, 911 F.2d 983 (5th Cir. 1990) .................................. 24-25

*United States v. Williams*, 790 F.3d 1240 (11th Cir. 2015)...................................17

*United States v. Winstead*, 890 F.3d 1082 (D.C. Cir. 2018)..................................27

*United States v. Zlatogur*, 271 F.3d 1025 (11th Cir. 2001)...................................25

*Wooden v. United States*, 595 U.S. 360 (2022) .....................................................27

*Yates v. United States*, 574 U.S. 528 (2015)..........................................................27

STATUTES PAGE

18 U.S.C. § 3553 ......................................................................................*passim*

18 U.S.C. § 3742 ..........................................................................................1

28 U.S.C. § 991 ..........................................................................................20

28 U.S.C. § 1291 ..........................................................................................1

28 U.S.C. § 1294 ..........................................................................................1

STATE STATUTES PAGE

Fla. Stat. § 812.13 ..........................................................................................9

U.S. SENTENCING GUIDELINES PAGE

Section 3E1.1 ..........................................................................................*passim*

Section 1B1.3 ..........................................................................................22

**<u>TABLE OF AUTHORITIES - *continued*</u>**

<u>FEDERAL RULES</u> <u>PAGE</u>

Fed. R. Crim. P. 32..........................................................................................30

<u>MISCELLANEOUS</u> <u>PAGE</u>

*Merriam-Webster's Collegiate Dictionary* (9th ed. 1983) ....................................18

*Merriam-Webster.com Legal Dictionary*,
https://www.merriam-webster.com/legal/acceptance%20of%20responsibility
(last visited Mar. 27, 2025)...........................................................................18

Michael M. O'Hear, Remorse, Cooperation, and "Acceptance of Responsibility":
The Structure, Implementation, and Reform of Section 3E1.1 of the Federal
Sentencing Guidelines, 91 Nw. U. L. Rev. 1507 (1997)...............................21

*The American Heritage Dictionary* (3d ed. 1992) ................................................18

*The Chicago Manual of Style* P 5.167 (15th ed. 2003)...........................................20

U.S. Sent'g Comm'n, *Acceptance of Responsibility Working Group Report*,
(1991)............................................................................................. 22-23

William Strunk, Jr. & E. B. White, *The Elements of Style* 30 (4th ed. 2000) .........20

## STATEMENT OF JURISDICTION

This is a direct criminal appeal from the final judgment entered by the United States District Court for the Middle District of Florida, Orlando Division, on December 10, 2024. [Doc. 73]. Lemaine timely filed a notice of appeal on December 10, 2024. [Doc. 75]. This Court has jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. §§ 1291 and 1294.

## STATEMENT OF THE ISSUES

1. Whether the term "acceptance of responsibility" in U.S.S.G. § 3E1.1 unambiguously excludes consideration of criminal conduct that is unrelated to the underlying offense?
2. Whether the district court committed procedural error by overruling the defense's objection to the factual finding that Lemaine committed an armed robbery as alleged in the PSR without properly holding the government to its burden of proof and by relying on facts for which there was no record support in the imposition of the sentence?
3. Whether the district court district court committed a clear error of judgment in weighing the § 3553(a) factors when it varied upward to 96 months' imprisonment?

# STATEMENT OF THE CASE

## A. Course of the Proceedings.

Lemaine was indicted on one count of possession of a weapon, a Glock 9 mm semiautomatic pistol, serial number BHNV104,[1] by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). [Doc. 1]. A detention hearing was held before the Magistrate and Lemaine was granted a bond pending trial, which included location monitoring using GPS monitoring equipment. [Doc. 18, 22 at 3-4]. On July 25, 2024, he pleaded guilty in the district court without a plea agreement. [Doc. 43]. After the entrance of his plea but before sentencing, Lemaine was arrested on a violation notice for the commission of a new armed robbery offense and, after a hearing on the matter, his bond was revoked. [Docs. 59, 60, 86]. Lemaine was sentenced on December 10, 2024, to a 96-month term of imprisonment, followed by three years of supervised release. [Docs. 70, 73]. The Notice of Appeal was timely filed on December 10, 2024 [Doc. 75] and this appeal follows. Lemaine is currently incarcerated at USP Coleman I with an anticipated release date of August 18, 2031.

## B. Statement of Facts.

### *1. Factual Basis of Plea*

The government recited the following factual basis for the plea, which Lemaine did not object to, during the Rule 11 hearing [Doc. 84 at 8-9]:

[1] The Indictment also contained a forfeiture allegation for the weapon. [Doc. 1].

Lemaine was convicted of felony crimes in the state of Florida on or about March 27, 2019, and on or about October 2, 2018. Lemaine knew that these were felony offenses at the time he was convicted of them and knew that he was prohibited from possessing firearms as a result.

On March 26, 2023, a law enforcement officer with Orlando Police Department observed a vehicle with the entire front windshield tinted, in violation of Florida law. The officer conducted a traffic stop and made contact with the driver of the vehicle, later identified as Lemaine, and detected the odor of marijuana emitting from the vehicle.

During the search of Lemaine's vehicle, law enforcement officers located a small amount of cannabis in the door handle compartment of the front passenger door, a black holster in the glove compartment, and a Glock firearm in the trunk of the vehicle. The firearm was located laying on the floorboard of the trunk, directly behind the armrest cupholder of the rear seat, which allows access to the trunk from the front seat.

A DNA analysis comparing DNA material found on the firearm and known DNA samples from Lemaine found a very strong support for the proposition that the defendant is a contributor to the DNA discovered on the firearm.

Law enforcement officers performed an interstate nexus examination of the firearm seized from the defendant and determined the firearm had been

manufactured in the country of Austria, and the importer was located in the state of Georgia, both outside the state of Florida.

*2. The Bond Revocation Hearing*

During the bond revocation hearing, the government presented the testimony of Orange County Sheriff's Office Detective Gregory Nash. Detective Nash stated that at approximately 12:22 a.m. on October 20, 2024, a call came in to respond to the scene of an armed robbery involving two suspects. [Doc. 86 at 6]. Detective Nash interviewed the victim, who advised that as she was exiting her residence and walking across the parking lot to her vehicle, she was approached by two black males wearing ski masks. [Doc. 86 at 6]. One of the men was holding what appeared to be an unknown pistol and the other was holding what appeared to be a Draco-style pistol. [Doc. 86 at 6-7]. Both men pointed their firearms at the victim and demanded everything she had on her, threatening to harm her. [Doc. 86 at 7]. The victim believed the firearms to be real and complied, handing over jewelry (which the victim estimated to value $90,000), $5,000 in cash, and the victim's cell phone. [Doc. 86 at 7]. The victim observed one suspect enter a parked white SUV and leave, traveling westbound, and the other fled on foot. [Doc. 86 at 7, 16].

Law enforcement was able to recover Ring camera footage from a neighbor across from the victim's residence. [Doc. 86 at 7]. Two separate videos were provided which showed a white Mercedes-Benz SUV pulling into the parking lot on

October 19 at approximately 10:12 p.m., and park in the location identified by the victim, and showed a portion of the robbery that corroborated what the victim had told law enforcement officers. [Doc. 86 at 7-8].

The Ring camera footage provided law enforcement with a make and model of the vehicle, a white 2013 Mercedes-Benz SUV, Florida tag number 48EKKD, enabling them to run several license plate reader cameras in the area. [Doc. 86 at 8-9]. The vehicle came back as registered to Cory Woods[2] at 2442 Sweet Viburnum Way in Ocoee, Florida, and detectives were able to track the vehicle's movements to and from the vehicle's registered address and the scene of the robbery on October 19 and 20. [Doc. 86 at 10].

Surveillance was conducted at 2442 Sweet Viburnum Way at around 1:30 a.m. on October 20, and officers observed two black males exit the residence and enter a white Nissan Altima sometime between 1:30 a.m. and 2:30 a.m. [Doc. 86 at 11, 17]. A traffic stop was initiated, and officers identified the driver as Lemaine and the front passenger as Rashad Johnson. [Doc. 86 at 11-12].

Detectives obtained a historical warrant on the victim's cell phone and discovered that shortly after the time of the robbery, the phone was pinging in the area of 2442 Sweet Viburnum Way. [Doc. 86 at 13]. In addition, Lemaine's GPS location data from his federal pretrial services officer showed him arriving at the

[2] Lemaine and Cory Woods have twin children together. [Doc. 86 at 12].

scene of the robbery on October 19 at 10:12 p.m. and departing the location on October 20 at 12:22 a.m., corresponding with the Ring camera footage. [Doc. 86 at 14]. Lemaine's ankle monitor GPS data also place him in the area of 2442 Sweet Viburnum Way shortly after the robbery, at 12:36 a.m. [Doc. 86 at 14].

A search warrant was obtained for 2442 Sweet Viburnum Way and no physical evidence of the robbery – including weapons, cash, and jewelry – was discovered. [Doc. 86 at 18]. There was also no evidence that would corroborate that the firearms used in the robbery were actually "firearms" as defined under the law. [Doc. 86 at 18].

*3. Sentencing Hearing*

Prior to sentencing, the government filed a Motion for an Upward Variance based upon the new criminal conduct, seeking "a 4-level [increase] and a sentence at the high-end of the adjusted U.S.S.G. imprisonment range" justified by Lemaine's "violation of pretrial release by committing an armed robbery." [Doc. 67 at 2]. The government relied on the evidence presented during the bond revocation hearing as well as "new" evidence presented through the testimony of Detective Nash at the sentencing hearing as follows:

GPS monitoring data showed Lemaine arriving at the address of 1199 Poppy Avenue on October 19, 2024, which is the address of Rashad Johnson. [Doc. 87 at 9-10]. Based on the fact that Lemaine was at Johnson's residence on October 19,

Detective Nash obtained historical cell site warrants on Johnson's and Lemaine's cell phones. [Doc. 87 at 10]. Johnson's records showed his cell phone pinging in the area of the robbery from approximately 10:12 p.m. on October 19 until 12:22 a.m. on October 20, when the cell phone started pinging in the area of 2442 Sweet Viburnum Way. [Doc. 87 at 11]. Johnson's cell phone data was consistent with the victim's and Lemaine's cell phone data as well as Lemaine's GPS monitoring data. [Doc. 87 at 11].

Detective Nash obtained a search warrant for both 2442 Sweet Viburnum Way and the 2013 white Mercedes-Benz that was identified as being involved in the robbery. [Doc. 87 at 11-12, 13]. Cory Woods confirmed that Lemaine was living with her at 2442 Sweet Viburnum Way. [Doc. 87 at 12, 13]. She also confirmed that Lemaine had used the 2013 white Mercedes-Benz that was believed to be associated with the robbery. [Doc. 87 at 13]. Evidence obtained with the search warrant showed that Lemaine's cell phone was connected to the car's infotainment system. [Doc. 87 at 13-14].

A search warrant was also obtained and executed for Lemaine's Apple iPhone. [Doc. 87 at 14]. There were several text messages between himself and Johnson, as follows:

- October 16, 2024, at 9:06 P.M., text from Johnson to Lemaine: "Be locked in for the weekend. This make or break time for real for real"

- October 16, 2024, at 9:26 P.M., text from Lemaine to Johnson: "Today the 16. 15 days until sentencing. Time to get it on"

- October 16, 2024, at 9:27 P.M., text from Johnson to Lemaine: "We locked in for the weekend and whatever fall after that"

- October 16, 2024, at 9:30 P.M., text from Lemaine to Johnson: "Say that"

- October 19, 2024, at 6:28 P.M., text from Johnson to Lemaine: "See if we can get that tonight"

- October 19, 2024, at 7:05 P.M., text from Lemaine to Johnson: "I'm trying G. She playing it hard"

[Doc. 87 at 14-15].

On November 7, 2024, the victim contacted Detective Nash by text message, which included a picture of a tracking device that was found on a vehicle that she was using on the night of the robbery. [Doc. 87 at 16]. The vehicle belonged to an associate of the victim's, but the victim frequently borrowed the vehicle and it was confirmed to be parked in front of her residence via Ring camera footage on the night of the robbery. [Doc. 87 at 16]. The owner had taken the vehicle to a mechanic who located the device. [Doc. 87 at 17]. The device was turned over to Detective Nash for processing. [Doc. 87 at 17].

The device was an Optimus 2.0 tracking device which can commonly be purchased off Amazon. [Doc. 87 at 17]. The named subscriber of this particular device was Chadwick Lemaine the phone number and two email addresses provided

were associated with him. [Doc. 87 at 18]. There was also a Visa debit card with the name Chadwick Lemaine on the card associated with the device. [Doc. 87 at 18].

From a comparison of the GPS data on the device and Lemaine's ankle monitor, both were found to be at the victim's residence on September 15, 2024, for a period of around two hours. [Doc. 87 at 19]. The last time the tracking device pinged at the 2442 Sweet Viburnum address was on October 19, 2024, and then it was found to have traveled towards the victim's residence on October 19, where Detective Nash believed the tracking device was installed. [Doc. 87 at 19, 20]. The device stayed on the vehicle until it was found by the mechanic in November. [Doc. 87 at 20].

The victim gave Detective Nash itemized receipts for the jewelry stolen from her in the amount of approximately $97,000. [Doc. 87 at 22, 23]. As of the date of sentencing, no jewelry, guns, or firearms associated with the robbery had been located. [Doc. 87 at 24]. There was also no videos, pictures, or visual surveillance depicting the firearms at issue. [Doc. 87 at 24].

The defense filed as an exhibit the standard jury instruction in Florida for robbery with a firearm, Fla. Stat. § 812.13(2)(a), which highlighted the definition of a "firearm" as

> any weapon [including a starter gun] which will, is designed to, or may readily be converted to expel a projectile by the action of an explosive; [the frame or receiver of any such weapon;] [any firearm muffler or firearm silencer;] [any destructive device;] [any machine gun]. The

> term "firearm" does not include an antique firearm unless the antique firearm is used in the commission of a crime.

[Doc. 71, 87 at 25].

After the district court imposed its sentence, Lemaine objected to the sentence's procedural and substantive reasonableness. [Doc. 87 at 44].

**C. Standard of Review.**

This Court reviews *de novo* the interpretation and application of the sentencing guidelines. *United States v. Dupree*, 57 F.4th 1269, 1272 (11th Cir. 2023) (en banc). By objecting to the district court's denial of acceptance of responsibility under § 3E1.1, Lemaine preserved the issue of whether the Guideline is ambiguous under *Kisor v. Wilkie*, 588 U.S. 558 (2019), and *Dupree* for review. *See United States v. Horn*, 129 F.4th 1275, 1297-98 (11th Cir. 2025).

Procedural reasonableness of a sentence is reviewed for an abuse of discretion. *United States v. Waters*, 937 F.3d 1344, 1258 (11th Cir. 2019). A sentencing court abuses its discretion if it crafts "a sentence based on clearly erroneous facts." *Id.* (internal quotation marks omitted) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)); *see also United States v. Philidor*, 717 F.3d 883, 885 (11th Cir. 2013) (factual findings are reviewed for clear error). "A fact finding is clearly erroneous when, after reviewing all the evidence, the court 'is left with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *United States v. Gupta*, 572 F.3d 878, 887 (11th Cir.

2009)). The district court's factual findings based on an incorrect burden of proof are not protected by clear error review. *United States v. Bridgewater*, 333 F. App'x 470, 473 (11th Cir. 2009) (internal citations omitted).

Substantive reasonableness is reviewed under an abuse-of-discretion standard, considering the totality of the circumstances and whether the § 3553(a) factors support the sentence. *United States v. Boone*, 97 F.4th 1331, 1338-39 (11th Cir. 2024). The party challenging the sentence bears the burden of showing that the sentence is unreasonable. *Id*.

## SUMMARY OF THE ARGUMENT

Based on the ordinary meaning of "acceptance of responsibility," § 3E1.1(a) simply directs a court to determine whether a defendant has acknowledged and expressed remorse for the conduct relating to his underlying offense. With that understanding, "[t]he [guideline] then just means what it means – and the court must give it effect, as the court would any law." *Kisor v. Wilkie*, 588 U.S. 558, 575 (2019). Section 3E1.1(a)'s grammatical structure, history, and purpose further support that conclusion. The Guidelines' commentary impermissibly expands the application of § 3E1.1(a) beyond its plain meaning to include consideration of criminal conduct that is unrelated to the underlying offense and is, therefore, not entitled to deference.

The district court committed procedural error by overruling the defense's objection to the factual finding that Lemaine had committed an armed robbery as

alleged in his PSR, without properly holding the government to its burden to prove the armed robbery by a preponderance of the evidence and considering facts not in evidence to impose the substantial upward variance resulting in a 96-month sentence.

The district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case. Because the degree of variance imposed by the district court here is undeniably "major," the error is not harmless.

For any and all of these reasons, Lemaine's sentence must be vacated, and his case remanded to the district court for resentencing with the application of the acceptance of responsibility departure under § 3E1.1 and without the imposition of the 4-level upward variance in accordance with this Court's opinion.

## ARGUMENT AND CITATION OF AUTHORITY

### I. The District Court Erred in Determining that Lemaine was not Eligible for an Accept Responsibility Adjustment Pursuant to the Plain Meaning of U.S.S.G. § 3E1.1.

Pursuant to U.S.S.G. § 3E1.1, a defendant's offense level is decreased:

> (a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.
>
> (b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to

> enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

The guideline does not define what constitutes "acceptance of responsibility."

The PSR initially included the three-point deduction for acceptance of responsibility in the calculation of Lemaine's advisory Guidelines range [Doc. 50 at ¶¶ 22, 23], but removed the deduction after Lemaine's bond was revoked [Doc. 65 at ¶ 22]. Over the objection of defense counsel, the district court ruled that Lemaine was not eligible for the acceptance of responsibility deduction because of the alleged commission of the new offense:

> Based on the Government's presentation of evidence alleging a course of conduct that violated the conditions of release, incorporating by reference the evidence presented to the Court at the previous hearing and what was presented today, that objection is overruled. The acceptance of conduct is gone. Acceptance of responsibility is gone.

[Doc. 87 at 26]. The court's determination was erroneous because the plain meaning of § 3E1.1 unambiguously provides that the adjustment applies to a defendant, like Lemaine, who has acknowledged and expressed remorse for the conduct relating to his underlying offense.[3]

[3] Because an adjustment under § 3E1.1(b) requires a defendant to first qualify for a decrease under subsection (a), this argument does not include a discussion on Lemaine's eligibility for the § 3E1.1(b) departure. However, Lemaine would be eligible for the extra-point decrease under subsection (b) if this Court finds that he is qualified for the § 3E1.1(a) departure and he does not waive that argument.

Application Note 1 to § 3E1.1 provides that the district court may consider a non-exhaustive list of factors, including the defendant's "voluntary termination or withdrawal from criminal conduct or associations," in determining whether a defendant qualifies under subsection (a). U.S.S.G. § 3E1.1 app. n.1(b). The Eleventh Circuit has consistently held that, pursuant to Application Note 1(b), a court is authorized to consider subsequent criminal conduct, even if it is unrelated to the offense of conviction, in determining whether a decrease for acceptance of responsibility under § 3E1.1(a) is appropriate. *See United States v. Pace*, 17 F.3d 341, 343 (11th Cir. 1994) (holding that the district court did not err in denying an acceptance-of-responsibility reduction based on marijuana use while on bond, even if unrelated to the offense of conviction). However, in light of the holdings in *Kisor v. Wilkie*, 588 U.S. 558 (2019), and *United States v. Dupree*, 57 F.4th 1269 (11th Cir. 2023) (en banc), Application Note 1(b) impermissibly expands the application of § 3E1.1(a) beyond its plain meaning and is not entitled to deference.

In *Stinson v. United States*, the Supreme Court held that "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." 508 U.S. 36, 38 (1993). Relying on its opinion in *Bowles v. Seminole Rock & Sand Co.*, the Court said that such determinations should be given deference unless they are "plainly erroneous or inconsistent with the

regulation." *Id.* at 45 (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)). For over twenty years the Eleventh Circuit has applied so-called *Seminole Rock* deference, also sometimes called *Auer*[4] deference, in governing the effect to be given to the Guidelines' commentary.

In 2019, *Kisor* significantly narrowed the application of *Seminole Rock-Auer* deference. 588 U.S. at 563-64. Pursuant to *Kisor*'s directive, *Seminole Rock-Auer* deference "can arise only if a regulation is genuinely ambiguous." *Id*. at 573. A regulation can only be deemed "genuinely ambiguous" if uncertainty exists "even after a court has resorted to all the standard tools of interpretation," including consideration of the "text, structure, history, and purpose of a regulation." *Id*. at 573, 575. "If uncertainty does not exist, there is no plausible reason for deference. The regulation then just means what it means – and the court must give it effect, as the court would any law." *Id.* at 574-75.[5]

---

[4] *Auer v. Robbins*, 519 U.S. 452 (1997).

[5] Even if the text of a regulation is "genuinely ambiguous," the agency's reading must satisfy several other criteria before a court can resort to *Seminole Rock-Auer* deference. The agency's reading must be "reasonable" and "within the zone of ambiguity the court had identified after employing all its interpretive tools." *Id.* at 575-76. And the court must consider whether the interpretation is the agency's official position, implicates the agency's substantive expertise, and reflects the agency's fair and considered judgment. *Id.* at 576-80; *see Rafferty v. Denny's, Inc.*, 13 F.4th 1166, 1179 (11th Cir. 2021).

*Dupree* applied the *Kisor* framework to the Sentencing Guidelines and held that a district court should not defer to the Guidelines' commentary unless the text of the Guidelines is "genuinely ambiguous." 57 F.4th at 1275 (quoting *Kisor*, 588 U.S. at 574). Specifically, the *Dupree* Court overruled prior precedent to "conclude that the text of [U.S.S.G.] § 4B1.2(b) unambiguously excludes inchoate offenses . . . and we have no need to consider, much less defer to, the commentary in Application Note 1." *Id*. at 1280, 1280 n.9. In so holding, the Eleventh Circuit reversed course on how it construes the commentary in the Application Notes to the Guidelines. Previously, the Court held that the Application Notes represented a binding interpretation of the Guidelines. *See, e.g., United States v. Lange*, 862 F.3d 1290, 1294 (11th Cir. 2017) ("[T]h[is] commentary constitutes a binding interpretation of the term 'controlled substance offense.'") (alterations in original) (internal quotation marks and citation omitted)). Now, *Dupree* stands for the proposition that, "using traditional tools of statutory interpretation," when a Guidelines provision is unambiguous, the Court cannot and should not consider the commentary to the guideline – especially if that commentary will expand an unambiguous definition in the text of the guideline provision itself. *Dupree*, 57 F.4th at 1277-80.

*A. § 3E1.1(a) is Unambiguous.*

Applying *Kisor* and *Dupree*, the essential question here is whether § 3E1.1(a) is genuinely ambiguous. To answer that question, "the [C]ourt must make a conscientious effort to determine, based on indicia like text, structure, history, and purpose, whether the [guideline] really has more than one reasonable meaning." *Kisor*, 588 at 589-90. The text, structure, history, and purpose of § 3E1.1(a) convey an unambiguous meaning that excludes consideration of criminal conduct that is unrelated to the underlying offense. When the guideline is unambiguous, as it is here, no deference to the commentary is due. *Dupree*, 57 F.4th at 1279.

1. <u>The Text of § 3E1.1(a) Conveys an Unambiguous Meaning.</u>

When interpreting a guideline provision issued by the U.S. Sentencing Commission, this Court begins "where courts should always begin the process of legislative interpretation, and where they often should end it as well, which is with the words of the statutory provision." *United States v. Poulo*, 491 F.Supp.3d 1244, 1247-48 (11th Cir. 2020) (internal citation omitted). "In the absence of a statutory definition, this Court must first consider whether the language at issue has a plain and unambiguous meaning." *United States v. Williams*, 790 F.3d 1240, 1245 (11th Cir. 2015) (citing *United States v. Fisher*, 289 F.3d 1329, 1337-38 (11th Cir. 2006); *Smith v. United States*, 508 U.S. 223, 228 (1993)).

Section 3E1.1 does not contain any definitions. Turning to dictionary definitions for guidance, *In re Walter Energy, Inc.*, 911 F.3d 1121, 1143 (11th Cir. 2018), the plain meaning of "acceptance of responsibility" is a defendant's acknowledgment of and remorse for his crime. *See* "acceptance of responsibility," *Merriam-Webster.com Legal Dictionary*, https://www.merriam-webster.com/legal/acceptance%20of%20responsibility (last visited Mar. 27, 2025); *see also United States v. Curley*, 55 F.3d 254, 258 (7th Cir. 1995) ("Acceptance of responsibility means that 'the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct.'").

Consistent with that straightforward definition, the American Heritage Dictionary defines "accept" as "to agree to take (a duty or responsibility)." *The American Heritage Dictionary* 10 (3d ed. 1992). Merriam-Webster's definition is essentially the same: to "accept" is "to recognize as true" and "to assume an obligation." *Merriam-Webster's Collegiate Dictionary* 48 (9th ed. 1983). Responsible means "required to give account, as of one's actions" and be "able to answer for one's conduct and obligations," respectively. *American Heritage Dictionary* at 1537; *Merriam-Webster's* at 1005.

In short, to "accept responsibility" in its plain and ordinary meaning refers to the state of being accountable or answerable for something, and to assume the consequences of one's actions related to it; essentially, the duty to do something

right and to be held liable if it is not done properly. Indeed, we teach our children at a young age that accepting responsibility is to admit when they have made a mistake and assume the consequences of their actions. Thus, there is nothing ambiguous about the term "acceptance of responsibility" or the text of § 3E1.1(a). Based on its plain and ordinary meaning, the unambiguous language of § 3E1.1(a) simply directs a court to determine whether a defendant has acknowledged and expressed remorse for the conduct relating to his underlying offense.

2. The Grammatical Structure of § 3E1.1(a) Modifies the Meaning of "Acceptance of Responsibility" to Unambiguously Exclude Consideration of Criminal Conduct that is Unrelated to the Underlying Offense.

To ascertain the plain meaning of a statute or guideline, this Court must be mindful to "not look at one word or term in isolation, but instead [to] look to the entire statutory context." *In re Walter Energy, Inc.*, 911 F.3d at 1143 (quotation and citation omitted). The Supreme Court has explained that "words are to be given the meaning that proper grammar and usage would assign them, [and] the rules of grammar govern statutory interpretation unless they contradict legislative intent or purpose." *Nielsen v. Preap*, 586 U.S. 392, 407 (2019) (cleaned up).

Looking to the grammatical structure and entire context of § 3E1.1(a) – "the defendant clearly demonstrates acceptance of responsibility for his offense" – the meaning of "acceptance of responsibility" is modified to unambiguously limit the

court's consideration of a defendant's acceptance of responsibility to only the offense of conviction for which the sentence is being imposed, not to other criminal conduct that is unrelated to the underlying offense.

Importantly, "for his offense" operates as a prepositional phrase that modifies the preceding "acceptance of responsibility," which is the direct object of the transitive verb "demonstrates." *See, c.f., United States v. Nader*, 542 F.3d 713, 717 (9th Cir. 2008) (citing *The Chicago Manual of Style* P 5.167 (15th ed. 2003) ("A prepositional phrase with an adverbial or adjectival function should be as close as possible to the word it modifies to avoid awkwardness, ambiguity, or unintended meanings."); William Strunk, Jr. & E. B. White, *The Elements of Style* 30 (4th ed. 2000) ("Modifiers should come, if possible, next to the words they modify.").

Application Note 1(b) impermissibly expands the application of § 3E1.1(a) beyond its plain meaning to include consideration of unrelated, subsequent criminal conduct and is, therefore, not entitled to deference.

3. <u>The History and Purpose of § 3E1.1(a) Support the Plain Meaning of "Acceptance of Responsibility."</u>

Such a reading is consistent with the history and purpose of § 3E1.1(a). The Sentencing Commission enacted the Guidelines with the purpose of providing certainty and uniformity to sentencing. *See* 28 U.S.C. § 991(b) (discussing the establishment and purposes of the United States Sentencing Commission). Section

3E1.1 sought to codify the pre-Guidelines practice of incentivizing guilty pleas by providing a sentence discount. *See* Michael M. O'Hear, *Remorse, Cooperation, and "Acceptance of Responsibility": The Structure, Implementation, and Reform of Section 3E1.1 of the Federal Sentencing Guidelines*, 91 Nw. U. L. Rev. 1507, 1512-13 (1997). The Commission initially feared, however, that granting an automatic reduction in sentence for pleading guilty would run afoul of the doctrine of unconstitutional conditions. *Id*. at 1513. The solution was to convert a bright-line rule proposal – always give a discount for guilty pleas – into the current test – does the defendant accept responsibility? – thereby permitting judges to avoid unseemly or inappropriate downward adjustments and preserving an opportunity for defendants who go to trial to earn the same adjustment as those who plead guilty. *Id*. at 1514.

As originally promulgated in November 1987, § 3E1.1(a) provided:

> If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility **for the offense of conviction**, reduce the offense level by 2 levels.

U.S.S.G. § 3E1.1(a) (1987) (emphasis added). The language of § 3E1.1(a) was amended shortly thereafter, effective January 15, 1988, to require that a defendant accept responsibility not for "the offense of conviction," but for his "criminal conduct," thereby expanding the scope of conduct the court could consider in determining whether to apply the two-point departure:

> If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility **for his criminal conduct**, reduce the offense level by 2 levels.

§ 3E1.1(a) (1988) (emphasis added); U.S.S.G., app'x C, amend. 46 (2024).

Section 3E1.1(a) was subsequently amended again, effective November 1, 1992,[6] returning the guideline back to its original, limiting language:

> If the defendant clearly demonstrates acceptance of responsibility **for his offense**, decrease the offense level by 2 levels.

§ 3E1.1(a) (1992) (emphasis added); U.S.S.G., app'x C, amend. 459 (2024).

The 1992 amendment was in response to a Circuit split created by the expansive language of the 1988 amendment as to whether § 3E1.1(a) required a defendant to accept responsibility for crimes other than those to which he had plead guilty or been found guilty. *See* U.S. Sent'g Comm'n, *Acceptance of Responsibility Working Group Report*, at 16-21 (1991).[7] With the expansive language of the 1988 amendment, the Third, Fourth, Fifth, and Eleventh Circuits all held that a defendant must accept responsibility for the offenses of conviction and all relevant conduct, as defined in U.S.S.G. § 1B1.3. *Id*. at 17 (citations omitted). The First, Second and Ninth Circuits, in contrast, determined that § 3E1.1(a) only required individuals to

[6] The 1992 amended version of § 3E1.1(a) is the current version of § 3E1.1(a).

[7] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/working-group-reports/miscellaneous/101991_Acceptance_of_Responsibility.pdf (last visited Mar. 27, 2025).

accept responsibility for those crimes with which they had been charged. *Id*. at 17-18. Three possible solutions were proposed by the Commission's working group to resolve the split:

(1) No change;

(2) Rewrite the guideline so that it explicitly requires a defendant to accept responsibility *for only the offense of conviction*; and

(3) Rewrite the guideline so that it explicitly requires a defendant to accept responsibility for the offense and all relevant conduct.

*Id*. at 26 (emphasis added). The Commission chose the second option, which became the 1992 amendment. Thus, pursuant to the historical enactments of § 3E1.1, the guideline provision is specifically intended to *exclude* subsequent criminal conduct from a defendant's eligibility for the two-point departure.

Despite the Commission's clarification, the debate surrounding the meaning of § 3E1.1(a) took on a different form after the 1992 amendment, centering on the objective indicia of acceptance of responsibility enumerated in the Application Notes; specifically, a criminal defendant's "voluntary termination or withdrawal from criminal conduct or associations" at issue in this appeal. U.S.S.G. § 3E1.1, app. n. 1(b). Mirroring the previous debate, the question focused on whether Application Note 1(b) applies *to all crimes* committed by the defendant after conviction and before sentencing, or simply to those crimes that are related to the offense with which the defendant has been charged.

The majority of Circuits, including the Eleventh Circuit in *Pace*, have adopted the Fifth Circuit's reasoning in *United States v. Watkins*, 911 F.2d 983 (5th Cir. 1990), which was decided prior to the 1992 amendment, to hold that a district court is authorized to consider subsequent criminal conduct, even if it is unrelated to the offense of conviction, in determining whether a decrease for acceptance of responsibility is appropriate. *See Pace*, 17 F.3d at 343-44.

In *Watkins*, the defendant pled guilty to possession of stolen treasury checks but was denied a decrease for acceptance of responsibility because he had used cocaine while on release pending sentencing. *Id*. at 343. The Fifth Circuit affirmed the district court, saying:

> Among the appropriate factors specified in the Guidelines for determining if a defendant qualifies for the acceptance of responsibility reduction is the defendant's "voluntary termination or withdrawal from criminal conduct or association." We note that this factor is phrased in general terms and does not specify that the defendant need only refrain from criminal conduct associated with the offense of conviction in order to qualify for the reduction. Thus, we find that the district court's interpretation that acceptance of responsibility includes refraining from any violations of the law is not without foundation. ... The district court's refusal to grant a reduction solely because the defendant engaged in unlawful conduct during his pretrial release, albeit conduct unrelated to the offense of conviction, is not precluded by the Guidelines or the case precedent.

*Id*. (quoting *Watkins*, 911 F.2d at 985). The *Pace* court similarly rejected the defendant's argument that the 1992 amendment precluded the court's consideration of his post-plea marijuana use, pronouncing:

> [the amendment] was made to ensure that the district court did not deny a defendant a decrease solely because the defendant did not voluntarily admit all criminal conduct. The change was *not* made to take from the district court the discretion to consider the defendant's continued criminal conduct when the government has adequate proof of such conduct.

*Id*. at 344 (emphasis in original).

However, based on the plain language of the guideline as described above, the focus of the inquiry should be on whether the defendant has accepted responsibility for his offense – not whether the defendant has, before sentencing, successfully overcome his propensity to commit any criminal act. *Watkins* was decided when credit for "acceptance of responsibility" required a defendant to accept responsibility for "his criminal conduct." § 3E1.1(a) (1988). After the *Watkins* decision, the Commission promulgated the 1992 amendment to make clear that the defendant need only accept responsibility for the offense of conviction. And under *Kisor* and *Dupree*, the text of that amendment controls without consideration of the commentary.

*Watkins* was implicitly overruled by the 1992 amendment to § 3E1.1(a). *See, e.g., United States v. Zlatogur*, 271 F.3d 1025, 1028 n. 1 (11th Cir. 2001) ("Statutory change – and the enactment of a new rule provision is equivalent to a statutory change – can supercede one of our decisions for purposes of the prior panel precedent rule."). Under the prior-panel-precedent rule, *Pace*, which follows the *Watkins* holding, is no longer binding because *Kisor* and *Dupree* has further

"overruled or undermined [it] to the point of abrogation." *See United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008).

4. The Traditional Tools of Construction Yield a Definitive Meaning of the Term "Acceptance of Responsibility."

To summarize, based on the ordinary meaning of "acceptance of responsibility," § 3E1.1(a) simply directs a court to determine whether a defendant has acknowledged and expressed remorse for the conduct relating to his underlying offense. With that understanding, "[t]he [guideline] then just means what it means—and the court must give it effect, as the court would any law." *Kisor*, 588 U.S. at 575. As discussed above, § 3E1.1(a)'s structure, history, and purpose further support that conclusion. The commentary should not be deferred to where there is "only one reasonable construction" of the guideline, *id.*, and that is the case here. Lemaine's sentence must be vacated and his case remanded for resentencing with the application of the 3-point § 3E1.1 acceptance of responsibility departure.

*B. The Rule of Lenity Applies to Resolve any Doubt of Ambiguity.*

Even if there are doubts about the meaning of "acceptance of responsibility," this Court should resolve that doubt in Lemaine's favor under the rule of lenity and still not resort to the commentary. *See United States v. Nasir*, 17 F.4th 459, 474 (3d Cir. 2021) (en banc) (Bibas, J., concurring) ("When a guideline is ambiguous, the rule of lenity calls for adopting the more lenient of two plausible readings."); *United States v. Campbell*, 22 F.4th 438, 446 (4th Cir. 2022) ("If the meaning of [a

guideline] nevertheless remains ambiguous at this point, 'the rule of lenity has some force' here.") (quoting *United States v. Winstead*, 890 F.3d 1082, 1092 n. 14 (D.C. Cir. 2018) (alteration adopted)).

"The rule of lenity is on the of the oldest and most traditional tools of statutory interpretation." *Romero v. Sec'y U.S. Dep't of Homeland Security*, 20 F.4th 1374, 1383 (11th Cir. 2021); *see also Kisor*, 588 U.S. at 631 (explaining that the traditional tools of construction include "all sorts of tie-breaking rules for resolving ambiguity"). It is a "longstanding safeguard against excessive punishment," *Nasir*, 17 F.4th at 473 (Bibas, J., concurring), and requires that penal laws be construed strictly, with any ambiguities resolved in favor of the defendant. *See Yates v. United States*, 574 U.S. 528, 548 (2015); *United States v. Caniff*, 955 F.3d 1183, 1191 (11th Cir. 2020). Thus, "where uncertainty exists, the law gives way to liberty." *Wooden v. United States*, 595 U.S. 360, 390 (2022) (Gorsuch, J., concurring).

Given the Guidelines' anchoring role and centrality in sentencing, when confronted with two plausible readings of a guideline provision, courts should "adopt[] the more lenient." *Nasir*, 17 F.4th at 474 (Bibas, J., concurring); *see also Wooden*, 595 U.S. at 394-96 (Gorsuch, J., concurring) (explaining that lenity should be employed after applying other traditional tools of statutory construction, rather than looking outside the statute's text). That is, if a comment to an ambiguous

guideline has a "clear tilt" toward harshness, lenity should displace it. *Nasir*, 17 F.4th at 474 (Bibas, J., concurring).

Under the rule of lenity, the Court should construe the term "acceptance of responsibility" to mean that a defendant has acknowledged and expressed remorse for the conduct relating to his underlying offense and find that Application Note 1(b) impermissibly expands the application of § 3E1.1(a) beyond its plain meaning to include consideration of unrelated, subsequent criminal conduct and is, therefore, not entitled to deference. Either way, a remand is warranted to apply the correct definition of "acceptance of responsibility" to Lemaine's sentence.

## II. The District Court Procedurally Erred when Resolving Lemaine's Factual Objections to the Presentence Investigation Report.

The district court committed procedural error by overruling the defense's objection to the factual finding that Lemaine committed an armed robbery as alleged in his PSR without properly holding the government to its burden of proof and by relying on facts for which there was no record support in the imposition of the sentence.

A district court can rely on any undisputed facts within the PSR, *United States v. Philidor*, 717 F.3d 883, 885 (11th Cir. 2013), because the failure to object to those facts serves as an admission to those facts for the purposes of sentencing, *United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006). However, when a defendant

objects to a factual basis of his sentence, "the government has the burden of proving the disputed fact by a preponderance of the evidence." *Philidor*, 717 F.3d at 885; *United States v. Aguilar-Ibarra*, 740 F.3d 587, 592 (11th Cir. 2014).

"Preponderance of the evidence is not a high standard of proof. It is not, however, a toothless standard either, and a district court may not abdicate its responsibility to ensure that the prosecution meets this standard before adding months or years onto a defendant's prison sentence." *United States v. Askew*, 193 F.3d 1181, 1183 (Cir. 11th 1999). Although the preponderance-of-the-evidence standard is less rigorous than others, the district court must still "ensure that the Government carries [its] burden by presenting reliable and specific evidence." *United States v. Martinez*, 584 F.3d 1022, 1027 (11th Cir. 2009) ("It is by now abundantly clear that once a defendant objects to a fact contained in the PSI, the government bears the burden of proving that disputed fact by a preponderance of the evidence."); *United States v. Lawrence*, 47 F.3d 1559, 1566 (11th Cir. 1995) (explaining that when a defendant challenges a fact in the PSR, the government's burden of proof is triggered).

"Once the Government has presented proper evidence, the district court must either: (1) make an explicit factual finding as to the allegation; or (2) determine that no such finding is necessary because the matter controverted will not be taken into

account in sentencing the defendant." *Martinez*, 584 F.3d at 1027 (citing *Lawrence*, 47 F.3d at 1567); *see also* Fed. R. Crim. P. 32(i)(3)(B). If the court declines to resolve a defendant's factual objection because it is not relying on the disputed matter when imposing sentence, "it must expressly set out in writing any disputed facts left unresolved." *Shukwit v. United States*, 973 F.2d 903, 904-05 (11th Cir. 1992); Fed. R. Crim. P. 32(i)(3)(B).

At sentencing, Lemaine objected to the armed robbery allegation contained in the final PSR [Doc. 87 at 7], which provides in pertinent part:

> According to the Affidavit for Arrest, on October 20, 2024, deputies with the Orange County Sheriff's Office responded to a **Robbery with a Firearm** and made contact with the victim. The victim advised that as she was walking to her vehicle from her residence, she was approached by two unknown males wearing masks and carrying firearms. The two males pointed their firearms at the victim and demanded she hand over all her belongings. The victim turned over multiple pieces of custom jewelry (estimated value of $100,000), $5,000 in cash, and her cell phone.

[Doc. 65, ¶ 43] (emphasis added). Carrying a firearm is an element of robbery with a firearm ("armed robbery") under Florida law, *see, e.g.*, *Tookes v. State*, 842 So. 2d 1063, 1065 (Fla. 4th DCA 2003) (finding that the trial court erred by stating to jury that the use of a firearm was "not an element" of armed robbery), and a fact which the government had the burden of proving by a preponderance of the evidence. *See United States v. Hamidullah*, 786 F. App'x 914, 918 (11th Cir. 2019) (a defendant's factual objections "shift[] the burden to the Government to prove the disputed facts

by a preponderance of the evidence and impose[] on the district court a duty to ensure that the Government carrie[s] that burden").

At sentencing, the government informed the court that it had "new" evidence in support of the armed robbery allegation, and asked whether it needed to present the evidence on the record to satisfy the court that it had met its burden of proof:

GOVT: The Court presided over the bond revocation hearing where I presented Detective Nash's testimony. My belief is that if the Court finds that that is sufficient evidence to make a finding that the defendant did commit the robbery, we can move forward on whether or not as to the defendant's objections and my request for an upward variance.

There has been new evidence secured. It is an ongoing investigation. But the Orange County Sheriff's Office does have new evidence, some of which I reference in my motion for upward variance. That can be seen as – I can put that witness on, and I've given notice to the defendant of the arrest affidavit and the investigative report. I gave that to the defense earlier this week, filed with the Court an exhibit list. So I can add to it. I can start from the very beginning and present all that evidence again.

[Doc. 87 at 4]. The court responded that because the government's burden to prove the facts of the armed robbery at sentencing was the same as it was for the bond revocation, it could incorporate by reference the evidence presented during the revocation hearing and could (but did not have to) present just the new evidence to the court:

COURT: Well, you can certainly ask me to incorporate by reference the evidence you previously presented, **because the burden is going to be the same at sentencing as it was for revocation**, and then if you want to add on any additional facts that have been discovered during the course of a continuing investigation, you're certainly invited to do so.

> But I was here, and we have a record of the evidence you presented previously, so that's on the table. So we don't need to go through that again. I just wanted to see what you intended on doing today additionally. I understand now.

[Doc. 87 at 4-5] (emphasis added). The government opted to introduce its new evidence to the court and the court determined that Lemaine had committed the armed robbery without making an explicit factual finding that the government had proven the new offense by a "preponderance of the evidence." [Doc. 87 at 26-27, 38-40]. The court fashioned Lemaine's sentence pursuant to the government's motion for an upward variance based on these factual findings. [Doc. 87 at 42].

The court's reliance on the burden of proof at the bond revocation was insufficient to show that it held the government to the preponderance-of-the-evidence standard at sentencing. At the bond revocation hearing, the court clearly identified the standard of proof as probable cause,[8] which the court acknowledged was a "very low burden," leaving open a lot of evidentiary questions that would not meet a higher burden of proof:

COURT: Mr. Lemaine, I think the biggest problem from your attorney is the burden is so low here. I think if this case were in front of a jury or trier of fact and the standard of proof was beyond a reasonable doubt, there

[8] Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity," *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018), whereas a preponderance of the evidence "is evidence which is more convincing than the evidence offered in opposition to it." *United States v. Watkins*, 10 F.4th 1179 (11th Cir. 2021) (internal citations omitted).

> are a lot of loose ends that would necessarily need to be tied. You would have the opportunity to face your accuser, like the person who claims to have been robbed, et cetera. But this is a probable cause hearing, and that's a very low burden.[9]

[Doc. 86 at 22].

The new evidence introduced by the government at sentencing did not purport to show that either an actual firearm was used during the alleged robbery or that any of the stolen jewelry had been discovered with a nexus to Lemaine. The court admitted that the government did not prove "armed" robbery as specifically alleged in the PSR because there was no evidence that an actual firearm was involved:

> And there's three different types – there are many different types of robbery under Florida statutes. I mean, your attorney is right that technically there's no firearm, so he can argue credibly that, What if it was a toy or an antique or something that doesn't constitute a firearm? There's robbery with a weapon in the state of Florida. There's simple robbery in the state of Florida. All you have to do is induce fear of

[9] In describing reasonable articulable suspicion and probable cause, the Supreme Court has noted that they "are not 'finely-tuned standards'" but "are instead fluid concepts that take their substantive content from the particular contexts in which the standards are being assessed." *Ornelas v. United States*, 517 U.S. 690, 696 (1996) (citations omitted). Indeed, the Supreme Court has explained that:

> [t]he probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances. We have stated, however, that "[t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt," and that the belief of guilt must be particularized with respect to the person to be searched or seized.

*Maryland v. Pringle,* 540 U.S. 366, 371 (2003) (citations omitted).

> imminent serious bodily harm in someone. That's a robbery. You know, we can play with semantics. But that's the problem.

[Doc. 87 at 38-39]. The court also noted that it had some questions as to the credibility of the underlying facts of the robbery:

> And some questions I have that are never going to get answered – had you made a statement, I would have asked you this question. I don't know of anyone that leaves their home with $100,000 worth of valuables on them. So, obviously, that's an unusual situation. So why is someone leaving their home at that time with so many valuables on them, and how did you know that person was going to be leaving at that time, and why is that person alone unarmed with that much on them? I mean, there are Brinks trucks that are just beginning their routes during the day that have two armed people guarding a truck with less amounts than that person was carrying around. So I'll never know the answer to that question.

[Doc. 87 at 40]. But despite the lack of evidence and the government's failure to meet its burden, the court determined that Lemaine *had* committed the armed robbery and punished him accordingly. [Doc. 87 at 39-40, 41].

The district court's factual finding that Lemaine committed the armed robbery is not based on reliable and specific evidence. *See United States v. Robertson*, 493 F.3d 1322, 1330 (11th Cir. 2007) ("Although review for clear error is deferential, a finding of fact must be supported by substantial evidence."); *United States v. Rodriguez*, 732 F.3d 1299, 1305 (11th Cir. 2013) ("Absent a stipulation or agreement between the parties . . . an attorney's factual assertions alone do not constitute evidence that a District Court can rely on."). At most, the government's evidence puts Lemaine at the scene of the alleged crime, but "mere presence" is insufficient

evidence that Lemaine committed an armed robbery under both Florida and federal law. *See, e.g., McBride v. State*, 7 So.3d 1146, 1149 (Fla. 2d DCA 2009); *United States v. Santos*, 449 F.3d 93, 104 (2d Cir. 2006) (a defendant's mere presence at a crime scene or association with conspirators does not establish intentional participation in a Hobbs Act robbery, even if the defendant has knowledge of the conspiracy). The district court could have, *and should have*, requested that the government put forth evidence to support the commission of an *armed* robbery, particularly the use of a firearm, which the district court relied on in imposing Lemaine's sentence.

In sum, the district court overlooked the applicable standard of proof by failing to hold the government to its burden and erroneously considered facts not in evidence (the unproven use of a firearm) in imposing the substantial upward variance resulting in a 96-month sentence. Because Lemaine disputed the use of an actual firearm, and because the government did not offer evidence of that fact,[10] the district court's upward variance based on the armed robbery relied on facts for which there was no record support. *Martinez*, 584 F.3d at 1029; *United States v. Barner*, 572 F.3d 1239, 1251 (11th Cir. 2009). And since the district court relied on facts for which no record evidence existed, its findings are clearly erroneous, and Lemaine's

[10] The government conceded to the district court that the use of an actual firearm remained a disputed fact. [Doc. 87 at 37].

total sentence is procedurally unreasonable. *Gall*, 552 U.S. at 51; *Martinez*, 584 F.3d at 1029 (finding the district court clearly erred when it based its findings on plainly disputed facts); *Barner*, 572 F.3d at 1251 (noting that selecting a sentence based on clearly erroneous facts is a significant procedural error).

The district court not only failed to hold the government to its standard of proof in this case, but it also allowed the unproven armed robbery to become the main feature of the sentencing hearing and the basis for the upward departure. Because these errors were not harmless, this Court is obliged to vacate the sentence imposed and remand for resentencing. *See Martinez*, 584 F.3d at 1029; *see also Barner*, 572 F.3d at 1251; *Hamidullah*, 768 F. App'x at 919.

## III. The District Court Imposed a Substantively Unreasonable Sentence when it Varied Upward to 96 Months' Imprisonment.

Although the procedural error committed at Lemaine's sentencing alone requires a remand, the sentence imposed was also substantively unreasonable. See *United States v. Trailer*, 827 F.3d 933, 935-36 (11th Cir. 2016) (In reviewing for reasonableness, we first consider whether the district court committed any significant procedural error and then whether the sentence is substantively unreasonable under the 18 U.S.C. § 3553(a) factors and the totality of the circumstances.).

When reviewing a sentence imposed outside of the applicable Guidelines range, this Court "may consider the extent of the deviation, but must give due

deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall*, 552 U.S. at 51. Sentences within the Guidelines range are afforded a presumption of reasonableness, however no such presumption – of reasonableness or unreasonableness – applies to sentences outside the Guidelines range. *See id*. When imposing a variance, "a district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." *Id.* at 46.

Upward variances are imposed based upon the § 3553(a) factors. *See, e.g., United States v. Overstreet*, 713 F.3d 627, 637-39 (11th Cir. 2013). A sentencing court may impose an upward variance based upon uncharged conduct as it relates to the history and characteristics of the defendant, as well as the need to promote respect for the law, afford adequate deterrence, and protect the public. *See id*. at 639-40. The court may also impose an upward variance if it concludes that the Guidelines range was insufficient in light of a defendant's criminal history. *United States v. Sanchez*, 586 F.3d 918, 936 (11th Cir. 2009). When doing so, district courts are afforded "broad leeway in deciding how much weight to give to prior crimes the defendant has committed." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1261 (11th Cir. 2015).

In reviewing for substantive reasonableness, the totality of the circumstances are examined to determine "whether the statutory factors in § 3553(a) support the sentence in question." *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008). The § 3553(a) factors are: the nature and circumstances of the offense and history and characteristics of the defendant, the need for the sentence to reflect the seriousness of the offense, the need to promote respect for the law and afford adequate deterrence, the need to protect the public, the need to provide the defendant with training, education and medical care, the kinds of sentences available, the Sentencing Guidelines range for the offense, the Sentencing Commission policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide victims with restitution. 18 U.S.C. § 3553(a)(1)-(7).

Although district courts have considerable discretion in applying these factors and imposing a sentence, a district court abuses its discretion and commits substantive error when it: (1) fails to consider relevant factors that were due significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) commits a clear error of judgment in considering the proper factors. *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir.2010) (en banc); *see also United States v. Curtin*, 78 F.4th 1299, 1311 (11th Cir. 2023). To vacate a sentence, this Court must firmly believe that the district court "committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range

of reasonable sentences dictated by the facts of the case." *Irey*, 612 F.3d at 1190. A major variance requires a more significant justification than a minor one. *Id.* at 1196.

The applicable guideline sentence range in this case was 51-63 months in prison. [Doc. 65 at ¶ 71]. That range took into account the offense and relevant conduct, as well as Lemaine's criminal history and, notably, his loss of acceptance of responsibility under U.S.S.G. § 3E1.1 for the alleged armed robbery.[11] The district court imposed a sentence of 96 months in prison, 33 months more than the top of the applicable guideline range (50 months more than the top of the guideline range with acceptance of responsibility properly applied). As detailed in Issue II, *supra*, the district court's statements during Lemaine's sentencing hearing establish that it chose to impose a 4-level upward variance from the applicable guideline range based on its belief that Lemaine committed the new offense of armed robbery while out on bond. In essence, Lemaine was doubly punished for the new offense with the denial of the 3-point acceptance of responsibility deduction and the addition of the 4-point upward variance, making the alleged armed robbery the main feature of the sentencing hearing.

"Even though not bound by the [G]uidelines, a sentencing court may not give them so little consideration that it amounts to 'not giv[ing] any real weight to the

[11] With credit for acceptance of responsibility under § 3E1.1, the applicable Guidelines range was 37-46 months in prison. [Doc. 50 at ¶ 72].

Guidelines range in imposing the sentence.'" *Irey*, 612 F.3d at 1217 (quoting *United States v. Pugh*, 515 F.3d 1179, 1200 (11th Cir. 2008)). But that is exactly what the district court did here: it rejected the applicable Guidelines range by focusing single-mindedly on Lemaine's unproven and uncharged criminal conduct despite defense counsel's request that the court focus its analysis on the underlying offense:

> I would just ask that the Court focus its attention, and it's really 3553 considerations, on the offense Mr. Lemaine was charged, accepted, pled to, and is now before Your Honor for sentencing. That was driving around as a prohibited person with a gun in the car.

[Doc. 87 at 30] and consider its substantial mitigating evidence. [Doc. 87 at 30-31, 32-33]. The court singularly (and significantly) weighed the alleged armed robbery in fashioning Lemaine's sentence and punished him for the commission of the unproven offense.[12] [Doc. 87 at 37-42].

By failing to properly balance all the § 3553(a) factors, the 96-month sentence in this case is substantively unreasonable. *See, e.g., United States v. Crisp*, 454 F.3d 1285, 1292 (11th Cir. 2006) (a district court's "unjustified reliance upon any one [§ 3553(a)] factor is a symptom of an unreasonable sentence") (quoting *United States v. Rattoballi*, 452 F.3d 127, 137 (2nd Cir. 2006)). The district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case

[12] To-date, neither Lemaine nor Johnson have been formally charged with Robbery With a Firearm in the Orange County Circuit Court.

and imposing a variance far greater than the 30-month variance imposed in *Gall* that is undeniably "major" without adequate justification. *Gall*, 552 U.S. at 50. Lemaine's sentence must be vacated.

## **CONCLUSION**

For the reasons discussed herein, it is respectfully requested that this Court vacate Lemaine's sentence and remand his case to the district court for resentencing consistent with this Court's opinion.

Respectfully submitted,

A. FITZGERALD HALL, ESQ.
FEDERAL DEFENDER
MIDDLE DISTRICT OF FLORIDA

*/s/ Ann Marie Fitz*
ANN MARIE FITZ, ESQ.
Florida Bar No. 1007949
Research & Writing Specialist

Office of the Federal Defender
400 N. Tampa St., Ste. 2700
Tampa, Florida 33602
Tel: (813) 228-2715
E-Mail: ann_fitz@fd.org

Counsel for Appellant

# CERTIFICATE OF COMPLIANCE

**1. Type-Volume**

This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 10,513 words.

**2. Typeface and Type-Style**

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it is typed in 14-point Times New Roman font.

*/s/ Ann Marie Fitz*
Ann Marie Fitz, Esq.

Research & Writing Specialist
Office of the Federal Defender
Middle District of Florida

Counsel for Appellant

## CERTIFICATE OF SERVICE

I certify that on March 27, 2025, I have served a true and correct copy of the foregoing **Initial Brief of Appellant** upon the following:

**United States Attorney's Office**
**400 N Tampa St Ste 3200**
**Tampa, FL 33602-4798**

***Counsel for Appellee***

by uploading same to the Court's website using the CM/ECF system, which automatically sends notification to the parties and counsel of record.

*/s/ Ann Marie Fitz*
Ann Marie Fitz, Esq.

Research & Writing Specialist
Office of the Federal Defender
Middle District of Florida

Counsel for Appellant